Marc P. Berger
Sanjay Wadhwa
Gerald Gross
Paul G. Gizzi
James Hanson
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0077 (Gizzi)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | **COMPLAINT** |
| Plaintiff, | ) ) | |
| v. | ) ) | **ECF CASE** |
| RICHARD T. DIVER, | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) | |

Plaintiff Securities and Exchange Commission (the "Commission") alleges the following

against defendant Richard T. Diver ("Diver" or "Defendant"):

## SUMMARY OF ALLEGATIONS

1.      During 2017 and 2018, Diver caused his employer, an investment adviser

registered with the Commission (referred to herein as "Investment Adviser"), to overbill

investment advisory clients as part of a fraudulent scheme to inflate his own pay.

2.      During the approximate seven-year period between 2011 and December 2018,

Diver stole a total of approximately $6 million from Investment Adviser.  Diver, whose duties

included managing Investment Adviser's payroll and client billing, inflated his pay by hundreds

of thousands of dollars per year.  As part of his fraudulent scheme, Diver misused his position as

Investment Adviser's Chief Operating Officer ("COO") to cause Investment Adviser to overbill

its clients by approximately $750,000 from over 300 investment advisory client accounts, for the

purpose of generating additional revenue so that he could continue financing his inflated salary.

3.     When confronted by the Chief Executive Officer ("CEO") of Investment Adviser

in December 2018, Diver confessed to having carried out the scheme.

4.     By this action, the Commission seeks, among other things, permanent injunctive

relief, disgorgement of ill-gotten gains plus prejudgment interest thereon, and civil monetary

penalties.

## **VIOLATIONS**

5.     By virtue of the conduct alleged herein, Defendant aided and abetted violations by

Investment Adviser of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940

("Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

6.     Unless permanently restrained and enjoined, Defendant will again engage in the

acts, practices, transactions and courses of business set forth in this complaint and in acts,

practices, transactions and courses of business of similar type and object.

## **NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT**

7.     The Commission brings this action pursuant to authority conferred by Section 209

of the Advisers Act [15 U.S.C. § 80b-9].

8.     The Commission seeks a final judgment permanently enjoining Defendant from

committing violations of the securities laws provisions that Defendant aided and abetted

violations of as alleged in this Complaint, ordering Defendant to disgorge his ill-gotten gains and

to pay prejudgment interest thereon, and imposing civil money penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].   Certain of the events constituting or giving rise to the alleged violations occurred in the Southern District of New York.   For instance, Investment Adviser is a New York corporation with its principal place of business in New York, New York.

11.     In connection with the conduct alleged in this complaint, the Defendant, directly or indirectly, has made use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails, or of the facilities of a national securities exchange.

## DEFENDANT

12.     **Diver,** age 62, is a resident of Spring Lake, New Jersey, and New York, New York.  Diver was the cofounder of his employer, referred to herein as "Investment Adviser," and served as its COO until December 2018, when he was fired.   Prior to being terminated, Diver owned nine percent of Investment Adviser.   As COO, Diver's duties included managing Investment Adviser's payroll and client billing.   In 2017 and 2018, Diver was supposed to receive a base salary of $100,000 per year, augmented by quarterly discretionary bonuses, for total annual compensation of $300,000 to $350,000 per year.

## RELEVANT ENTITY

13.     **Investment Adviser** is a New York corporation with its principal place of

3

business in New York, New York. It is registered as an investment adviser with the
Commission.

**FACTS**

**A.**     **Background**

14.     In 1993, Diver founded Investment Adviser with, among others, its current CEO.
Over the past twenty-five years, Diver served as COO, and reported to Investment Adviser's
CEO.

15.     Until December 2018, Diver and CEO owned 9 percent and 91 percent of
Investment Adviser, respectively.

16.     While CEO focused on portfolio management, Diver managed Investment
Adviser's revenues and expenses.

17.     In particular, Diver's duties included managing Investment Adviser's payroll and
client billing.

18.     In that capacity, Diver was supposed to transfer Investment Adviser's fees from
client accounts to Investment Adviser's fee accounts at the various custodians who held client
assets and then to Investment Adviser's bank account, which were used to pay Investment
Adviser's expenses, such as rent, health insurance and payroll.

**B.**     **Diver's Fraudulent Scheme**

19.     Diver managed Investment Adviser's payroll. He did so by having Investment
Adviser contract with an outside payroll service.

20.     On a semi-monthly basis, Diver would call the payroll service and verbally
instruct it to issue payroll checks to Investment Adviser's employees, including himself.

21.     Between 2011 and 2018, Diver inflated his own pay by hundreds of thousands of

4

dollars per year.

22.     Beginning in 2017, Diver began causing Investment Adviser to overbill some of its clients in order to increase Investment Adviser's revenues so he could continue financing his inflated compensation.

23.     Diver was responsible for collecting Investment Adviser's advisory fees. Normally, he had his assistant use licensed software to calculate the value of each client's account as of the date of the end of the quarter.  The software automatically calculated the advisory fee due to Investment Adviser for each of its clients as of the beginning of each quarter.

24.     Diver would then direct his assistant to access at the beginning of each quarter the client accounts at the custodians, and transfer the calculated fees to fee accounts held in Investment Adviser's name at the custodians.

25.     Diver would then transfer the client advisory fees from the fee accounts at the custodians to Investment Adviser's bank account, which Diver used to pay Investment Adviser's expenses, including his own inflated salary.

26.     Beginning in 2017, Diver often departed from the general practice of accurately billing clients by billing off the normal cycle and instructing his assistant to bill clients in amounts calculated from the software on off-cycle dates (i.e., dates other than the end of the quarter).

27.     By doing this, Diver caused Investment Adviser to bill impacted clients for five and sometimes six quarterly payments in a single year.

C.     **The Scheme Collapses**

28.     In early December 2018, CEO received an inquiry from an Investment Adviser client regarding an overbilling.

5

29.     Upon questioning by CEO, Diver confessed to overbilling clients in order to personally profit himself.

30.     Diver told CEO that he had no financial ability to make restitution and claimed that he had engaged in wild personal spending.

## CLAIM FOR RELIEF

### Aiding and Abetting Violations of Sections 206(1) and 206(2) of the Advisers Act

31.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 30 of this Complaint.

32.     At all relevant times, Investment Adviser acted as an investment adviser as defined in Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].  Investment Adviser, while acting as an investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, employed devises, schemes or artifices to defraud clients or prospective clients, and engaged in transactions, practices or courses of business which operated as a fraud or deceit upon clients or prospective clients, in violation of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)].

33.     Investment Adviser acted through Diver, who was its COO and founder.

34.     Diver knowingly or recklessly provided substantial assistance to Investment Adviser's violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)].

35.     By reason of the foregoing, Diver aided and abetted pursuant to Section 209(f) of the Advisers Act [15 U.S.C. § 80b-9(f)], and unless enjoined will continue to aid and abet, violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)].

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

### **I.**

Enter a Final Judgment permanently restraining and enjoining Diver from violating Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)];

### **II.**

Enter a Final Judgment ordering Defendant to disgorge his ill-gotten gains and pay prejudgment interest thereon;

### **III.**

Enter a Final Judgment imposing civil money penalties upon Defendant pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and

### **IV.**

Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this

case be tried to a jury.

Dated:  March 28, 2019
        New York, New York

Marc P. Berger
Sanjay Wadhwa
Gerald Gross
Paul G. Gizzi
James Hanson
New York Regional Office
SECURITIES AND EXCHANGE
 COMMISSION
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-0077 (Gizzi)
Attorneys for Plaintiff